UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK NALI,

                Plaintiff,

CASE NO. 10-10035
HON. LAWRENCE P. ZATKOFF

v.

WAYNE COUNTY CLERK,
WAYNE COUNTY,
WAYNE COUNTY SHERIFF and
WAYNE COUNTY SHERIFF'S DEPARTMENT,

        Defendants.
        _____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on June 3, 2011

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court on Defendants' motion to dismiss and for summary judgment [dkt 51] and Plaintiff's motion for evidentiary hearing [dkt 57]. Defendants' motion has been fully briefed, but Defendants have not timely responded to Plaintiff's motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set forth below, Defendants' motion to dismiss and for summary judgment [dkt 51] is GRANTED, and Plaintiff's motion for evidentiary hearing [dkt 57] is DENIED.

## II. BACKGROUND

This case involves a former inmate of the Wayne County Jail, who claims, *pro se*, that his property and monies surrendered at the time of his incarceration were not returned to him in violation of his constitutional rights under 42 U.S.C. § 1983.

In 2002, Plaintiff was charged with extortion and stalking of a former girlfriend, and he was released on October 23, 2002, upon posting 10% ($5,000) of a $50,000 bond. On November 11, 2002, at the conclusion of a bond cancellation hearing, at which Plaintiff's bond was increased to $100,000, Plaintiff was incarcerated in the Wayne County Jail for failure to pay the increased bond. At the time of his booking, Plaintiff turned over personal property and clothing to jail officials pursuant to jail policy. Plaintiff alleges that such property included "$2,504.00 . . . some change, a watch, a gold chain with a star pendant and a gold ring; plus shoes, socks, pants, belt, shirt, tie, gold tie pin and a leather jacket." Plaintiff was issued a computer-generated property receipt, which indicated that Plaintiff turned over "Keys, Miscellaneous Cash in the amount of $2504.00; Change and a Watch."[1] The property receipt contained the following notice provisions regarding the disposition of personal property:

> I understand that if I am sent to a State Agency, my property and clothing is not to be transferred with me and upon transfer or release from the Wayne County Jail, I will have (90) days in which to make arrangements for my personal property and (30) days for my clothing to be picked up by myself, a family member, or friend.
>
> * * *
>
> I understand that if I fail to make the above arrangements, my property/clothing shall be considered abandoned and forfeited. At

---

[1] According to jail policy, all inmate monies over $2.00 are segregated from other personal property at intake and deposited in a bank account.

>that time, my property/clothing shall be donated to charity or administratively disposed of pursuant to 434.26, Michigan Compiled Laws Annotated.

According to the sworn affidavit of Corporal Lynn Calderon ("Calderon"), Deputy for Inmate Property at the Wayne County Sheriff's Office, on February 27, 2003, "Chuck Wagner[] presented identification and an order from Judge Pamela Harwood which authorized him to seize $2500.20 from [Plaintiff]'s personal inmate account." Calderon processed the order and released a check for that amount to Mr. Wagner pursuant to his court-ordered authority.

After a trial in which a jury found Plaintiff guilty of extortion, Plaintiff was sentenced on March 13, 2003. On March 14, 2003, Plaintiff was transferred from the Wayne County Jail to a state prison in Jackson, Michigan. Plaintiff acknowledges that, later that March, "an officer" informed Plaintiff that his leather jacket had been damaged, and that the officer notified Plaintiff of the claim procedure. The Wayne County Jail mailed Plaintiff at his home in Gross Point Farms, Michigan, a check for $200 to reimburse him for the damage to his jacket, although Plaintiff contends that he never received the check since he was incarcerated at the time.

According to the affidavit of Calderon, during a subsequent intake for a court hearing in May 2003, Plaintiff returned to the Wayne County Jail and listed Isabel Asenath Fiolek ("Fiolek") as a friend authorized to pick up Plaintiff's personal property.[2] Calderon also states that on June 18, 2003, Fiolek came to the Wayne County Jail and retrieved all of Plaintiff's personal property (but not his clothing or money), and that Calderon personally recorded the transaction. Defendants' counsel forwarded Calderon's affidavit to Plaintiff prior to filing Defendants' dispositive motion in

---

[2] Fiolek is the mother of Plaintiff's child, with whom Plaintiff has had ongoing child support litigation in Oakland County, Michigan.

3

an unsuccessful effort to obtain Plaintiff's concurrence.

Fiolek acknowledges through her own sworn affidavit that she picked up Plaintiff's personal property in 2003 while Plaintiff was incarcerated, and that the items included change, a watch, coins, and keys. Fiolek states that she maintained the belongings at her home until approximately 2006, and that she recalls giving the items to her and Plaintiff's son, Alexander Ozark ("Ozark"), to return to Plaintiff. She also states that Plaintiff gave Ozark his chain and star pendant before he went to jail. Ozark confirms in his sworn affidavit that Plaintiff gave him his gold chain and star pendant before going to jail. Ozark states that he does not recall where the jewelry items are at this time, but anticipates that they are at Plaintiff's home in Gross Point Farms, Michigan, where Ozark resided while attending college for a few years.

By check dated April 17, 2006, the Wayne County Circuit Court returned Plaintiff's bond money, less costs, attorneys fees and the applicable 10% of the 10% cash bond, which was retained pursuant to M.C.R. 6.106, for a total of $2,640.00. Defendants produced a copy of the check with Plaintiff's endorsement on the back.

Plaintiff was released from prison in 2009, and brought this action in January 2010, claiming that his property was not returned to him in violation of his constitutional rights under 42 U.S.C. § 1983. Plaintiff denies that he authorized Fiolek to retrieve his property from the Wayne County Jail and asserts that the affidavits of Calderon, Fiolek, and Ozark are not true. Plaintiff also requests than an evidentiary hearing be held, at which Plaintiff will prove that statements made by Calderon and Defendants' counsel are not true.

### III. STANDARD OF REVIEW

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which

4

relief may be granted tests the legal sufficiency of a plaintiff's claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in the plaintiff's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). A plaintiff must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct." *See also Ashcroft v. Iqbal*, __ U.S. ___, 129 S. Ct. 1937, 1953 (2009).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000). If, in deciding the motion, the Court considers matters outside the pleadings, the motion will be treated as one for summary judgment pursuant to Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d).

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;

5

>   or;
>
>   (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

## IV. ANALYSIS

**1.    Motion to Dismiss and for Summary Judgment**

Since 42 U.S.C. § 1983 does not contain a specific statute of limitations provision, federal courts must borrow state statutes of limitations for the type of claim raised. *See Wilson v. Garcia*, 471 U.S. 261, 266 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam). The accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). The limitations period begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Id.* at 220.

With respect to the alleged disposal of Plaintiff's bond money, clothing, and other personal property, Plaintiff has failed to timely bring his action. Regarding the bond money, the Court first notes that Plaintiff does not refute Defendants' evidence showing that this money (less costs and fees) was returned to Plaintiff in 2006. However, even if that were not the case, Plaintiff certainly had reason to know of his right to the return of such money more than three years prior to January 5, 2010, when Plaintiff filed the present action.

With respect to Plaintiff's clothing and other personal property, including his coins and jewelry, Plaintiff was given notice on November 11, 2002, that his property would be deemed

abandoned and disposed of after his transfer to a state agency (90 days for personal property and 30 days for his clothing). While Plaintiff contends that he did not learn that his personal property and clothing were disposed of until his release from prison in 2009, Plaintiff certainly had reason to know that his property and clothing would not be retained beyond 90 days of his transfer to a state prison in March 2003. Moreover, the affidavits of Calderon and Fiolek suggest that Plaintiff had actual knowledge of the Wayne County Jail property retention policy, and that Plaintiff in fact made arrangements to have his personal property removed from the jail in 2003. Despite this, Plaintiff chose to wait over six years to contest the disposal of his property.

Furthermore, as the unrebutted evidence indicates that the cash Plaintiff deposited with the Wayne County Jail was removed pursuant to a court-order authorizing the seizure of such money, Plaintiff has failed to show that the money was disposed of by any wrongful actions of Defendants. Accordingly, Defendants' motion for summary judgment is granted.[3]

**2.      Motion for Evidentiary Hearing**

As mentioned *supra*, Plaintiff seeks to hold an evidentiary hearing, at which he claims he will prove that statements made by Calderon and Defendants' counsel are untrue. However, what Plaintiff desires is essentially a trial on the merits of his claim. Discovery has concluded in this case, and if evidence existed to rebut Calderon's affidavit and Defendants' counsel's statements made in briefs, Plaintiff was free to submit such evidence to the Court's attention. Plaintiff's unsupported belief that such statements are untruthful or misplaced is an insufficient basis upon which to proceed to trial. Accordingly, Plaintiff's motion for an evidentiary hearing is denied.

---

[3]Since this issue is dispositive of Plaintiff's claim, the Court need not address Defendants' additional arguments for dismissal.

### 3.     Request for Sanctions and Injunctive Relief

Given the affidavits of Calderon, Fiolek, and Ozark, Defendants request that the Court impose sanctions on Plaintiff in the amount of $1,000 for forcing Defendants to defend this action despite overwhelming evidence that his claim was meritless. Defendants also cite to an order of Judge Gerald Rosen, Chief Judge for the Eastern District of Michigan, which noted that Plaintiff has filed over 20 cases in this District, and that Plaintiff has exhibited a tendency to commence federal lawsuits without first considering whether they can survive the threshold scrutiny for dismissal under 28 U.S.C. § 1915(e)(2)(B). *Nali v. State of Michigan*, No. 10-10837, 2010 U.S. Dist. LEXIS 47217, at * 9 (E.D. Mich. May 13, 2010). Judge Rosen further stated that future submissions by Plaintiff that are not well-founded or brought in good faith would result in the imposition of sanctions, as well as an entry of an injunction barring Plaintiff from filing further papers without securing leave from the Court. *Id.*

However, the Court does not agree that the issuance of sanctions or an injunction based on the alleged violation of Judge Rosen's order is warranted. First, the Court notes that Judge Rosen's order was filed several months after Plaintiff filed the present suit. Second, the present suit was not dismissed for failure to survive the threshold scrutiny under 28 U.S.C. § 1915(e)(2)(B). In fact, Defendants did not even file a dispositive motion until after the close of discovery. Although Plaintiff chose to continue his action after viewing the affidavits of Calderon, Fiolek, and Ozark, the Court does not agree that he should be subjected to sanctions for this choice. Plaintiff believes that the statements of Calderon, Fiolek, and Ozark are untrue, and he was entitled to maintain that belief, despite the fact that this unsupported belief is insufficient to create a genuine dispute as to a material fact. Moreover, the affidavits only related to Plaintiff's personal property, leaving issues related to

his clothing and money outstanding. Therefore, Defendants' request for sanctions and injunctive relief are denied.

## V. CONCLUSION

Accordingly, for the above reasons, IT IS HEREBY ORDERED that Defendants' motion to dismiss and for summary judgment [dkt 51] is GRANTED.

IT IS FURTHER ORDERED that Defendants' request for sanctions and injunctive relief is DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion for evidentiary hearing [dkt 57] is DENIED.

IT IS SO ORDERED.

    S/Lawrence P. Zatkoff  
    LAWRENCE P. ZATKOFF  
    UNITED STATES DISTRICT JUDGE

Dated: June 3, 2011

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on June 3, 2011.

    S/Marie E. Verlinde  
    Case Manager  
    (810) 984-3290